## INVALID GUARANTY OF BONDS BY AN INTERURBAN RAILWAY COMPANY.

Common Pleas Court of Franklin County.

### THE TROY TRUST COMPANY v. THE C., D. & M. RAILWAY CO.

Decided, November 10, 1915.

*Interurban Railways—Without Authority to Guarantee the Bonds of Another Company of the Same Class—Consent of Stockholders Does Not Validate Such a Guaranty, When—Refusal to Permit Suit Against a Receiver Upon Such a Guaranty.*

1. The statute permitting steam and commercial railroads to give assistance to other like companies, in the form of a guaranty or otherwise, has no application to interurban railways, and it follows that where such a road is in the hands of a receiver the court can not permit a claim based on a guaranty which is *ultra vires* to be asserted against it.

2. A contract of absolute guaranty made by an interurban corporation to pay an issue of bonds of another interurban corporation for the purpose of constructing a line of railway which is not expressly authorized by its charter is *ultra vires*. Such corporation can not undertake to make such guaranty under the guise of an incidental power to sell power, can not undertake to carry out a distinct and independent purpose contrary to its granted power.

3. A showing that such a contract of guaranty was assented to by the stockholders can be of no avail, where it appears that both companies were dominated by one man through ownership of stock

and that the bonds upon which the guaranty was given were sold by this man in order to reimburse himself for money used in construction.

*W. Z. Davis,* for plaintiff.
*H. F. West,* contra.

KINKEAD, J.

This action is brought by plaintiff on a written guaranty of bonds made by officers of the defendant company.

The defendant company owned a line of electric railway running from Columbus, Franklin county, to Marion, Marion county, Ohio. The Columbus, Marion & Bucyrus Railroad Co. was a corporation organized to operate a line of railway from Marion to Bucyrus, Ohio. The Marion & Bucyrus Company executed a mortgage to secure an issue of bonds in the sum of $500,000. The defendant company entered into a contract August 1, 1905, with the C., M. & B. R. R. Co. by which it agreed to guarantee the payment of the principal and interest of $500,-000 which sum was to be borrowed to provide funds with which to build and construct its line of railway. The contract between the two companies provided for the making of certain traffic arrangements, and for the sale of power by the defendant company when the line of the C., M. & B. R. R. was built. The liability assumed by the defendant company was to pay the principal of the $500,000 of bonds and interest in case of default. It was thus a liability of $500,000.

There was default, and on foreclosure of the mortgage bonds, there was left due and unpaid the sum of $598,146.31, recovery of which is now sought in this action.

The Marion & Bucyrus road was constructed by John G. Webb under a contract by which he received all the stock of the corporation and all the bonds issued by it. He paid the interest on the bonds up to and including March 1, 1909, the corporation not paying any portion. The railroad property was never turned over to the corporation by Webb as contractor, a receiver having been appointed who took charge of it in the name and for the corporation who afterwards sold the road.

The C., D. & M. Railway Co. received nothing on account of the bonds, and no payment, even for current, was ever made by the Marion & Bucyrus Road to the defendant company.

John G. Webb owned substantially all of the stock of both corporations. It was turned over to him under a contract to build the road. John G. Webb was president, stockholder and director of both companies, and was the contractor to build the road.

· The C., M. & B. Railroad Co., it seems from the facts submitted, never did any business, either in the construction of its road, or in its operation, except to execute a mortgage and issue bonds, and place them in the hands of John G. Webb for disposition and sale to raise money. John G. Webb had absolute control over every act, both that of the C., D. & M. Railway in guaranteeing the bonds, as well as the disposition of the bond and the cash derived therefrom.

John G. Webb individually did whatever business was done in running the road after the line was constructed, before a receiver was appointed.

Plaintiff does not have the right to institute or maintain this action against the defendant without having first obtained leave of this court. No such leave or authority has been obtained.

The Columbus, Delaware & Marion Railway was a corporation organized to be located at Columbus, Franklin county, Ohio, and its principal business there to be transacted.

Summons was issued commanding the sheriff to notify "H. G. Catrow, as president of the Columbus, Delaware & Marion Railway Company."

Summons was served on the president of the corporation by the sheriff of Montgomery county, Ohio.

Under the statute, Section 11273, an action against a transportation company owning or operating an electric traction road, may be brought in any county through or into which such electric traction road passes or extends.

Advantage may be taken of this statute only when such transportation company is itself operating its electric traction road. Being in the hands of a receiver at the time this action was filed,

no suit could be brought against the corporation, or its receiver without leave. The action was commenced August 14, 1914. Section 9065, authorizing suit to be brought against a receiver of an electric road without leave was passed, in its amended form, April 6, 1915.

A jury is waived and the case is submitted upon an agreed statement of facts.

The defendant company is and has been in the hands of a receiver since August 5, 1909. It is totally insolvent· and is in process of liquidation, and all persons were enjoined from prosecuting any action against the defendant without leave of court, and no such leave was given plaintiff to bring this action. Therefore it is claimed that this court has no jurisdiction over this case.

Inasmuch as plaintiff has waived a jury and submitted its claim to the decision of the court, and all of the essential facts being before the court—the whole question, that pertaining to the right of plaintiff to sue the defendant corporation at all, as well as the merits of its claim—the court may make full disposition of all the questions involved.

The court having charge of this trust, can not permit this case of plaintiff to proceed, even to judgment. Even if the right of plaintiff to a judgment was clear, the case being submitted as it is to the court, with the facts in the record as to the total insolvency of defendant and the receivership, the court is justified in considering whether the claim if it has merit and validity may be asserted against the receivership.

The rules concerning the discretionary power of the court to permit suit to be brought against a receiver is discussed by this court in *Dorr Run Coal Co.* v. *Nelsonville Coal Co.,* 11 N.P.(N. S.), 38. In cases at law the court has little discretion, perhaps none, to pass upon the merits of the claim. In cases of equity it is entirely within the discretion of the court to grant application to bring an independent action against its receiver, or to compel the application to intervene in the original case.

The court may now proceed to state reasons why it can not allow judgment to be entered in this case, and why it can not

allow the claim of plaintiff to be asserted against the defendant and the property in the hands of this court.

In the first place the contract of guaranty declared upon by plaintiff is not within the charter powers of the defendant, and is therefore, *ultra vires*.

The statutes authorizing steam or commercial railroads to give assistance to other like companies in the form of guaranty or otherwise can not have application to interurban railroads. The purpose and the history of those statutes makes this clear even without the aid of decisions, though the latter support this view.  *Ohio Electric Ry. Co.* v. *Ottowa*, 85 O. S., 229; *Comers.* v. *Traction Co.*, 75 O. S., 548; *Bridge Co.* v. *Iron Co.*, 59 O. S., 179.

It must be well understood that Section 8806 and kindred statutes were enacted many years ago for a distinct purpose to aid in the construction of steam railroads. · A somewhat careful consideration was given these statutes by this court in *Mannington* v. *Railway*, 9 N.P.(N.S.),665.  This well established rule is referred to as convincing proof that an electric interurban can have no such power to undertake such a guarantee as that declared upon in this case.

Neither can it be claimed that the defendant company had incidental power to undertake such contract of guaranty.  True it has power to manufacture, furnish and sell electricity for light, heat, power and other purposes, and for doing all things incident to said purpose.  But it can not under the guise of an incidental power undertake to carry out a distinct purpose contrary to its granted powers.  That is, it can not make an absolute guaranty to pay bonds of another separate proposed electric railroad in an amount of $500,000, for the express purpose of enabling such other company to raise the necessary funds to build and construct another railway, and thus incidentally sell some electric power.

The guaranty is a paramount contract and not one incidental to the exercise of an express power given by charter.

The legal doctrine is that where a corporation enters into a contract beyond its powers, and receives no money directly, as

the result of such contract, its receipt being merely incidentally enhanced thereby, it is not thus estopped to deny the validity of the contract. *Railroad* v. *Hotel Co.*, 102 Md., 307; 111 Am. St., 362, Note; 70 Am. St., 156-180.

The doctrine is applied for the purpose of preventing capital from being subjected to the risks of enterprises not contemplated by the charter. *Railway* v. *Bridge Co.*, 131 U. S., 371.

But it is insisted that the stockholders consented to the contract of guaranty. But that is without avail in view of the dominating influence of John G. Webb, who owned most of the stock, substantially all, in both companies, and who was desirous of selling $500,000 bonds in order to raise money to pay himself for building the Marion & Bucyrus road.

It is contrary to public policy and inimical to individual and corporate rights that a person shall act in a dual capacity such as stockholder, director, president of two corporations, where he owns the majority of the stock, for the purpose especially of aiding him to carry out an individual contract of his own with one of the companies. It is plain that Webb as president, stockholder and director of both companies, and as contractor to build the road had a greater interest to take every step designed to solidify the bonds so they could be sold and so he could secure the money to build the road. Such a contract is avoidable, and a receiver as representative of all parties, shareholders, creditors, bondholders may avoid the contract. *Machen Corp.*, Section 1581; *Hayes* v. *R. R. Co.*, 38 N. J. L., 505; *Machen*, Section 1594.

I think the doctrine of *Goodin* v. *Canal Co.*, 18 O. S., 169, applicable.

Therefore, it is within the power and duty of the court, in view of the manner in which this case is submitted, and of the fact that the property of the defendant company is being held and administered by this court, to apply these principles, and to deny the plaintiff the privilege of proceeding with this action to judgment, and to refuse to allow it as a claim against the property in the hands of the receiver of the defendant company.

In view of the undenied claim made by the defendant that the defendant is insolvent, it would be, therefore, useless to allow judgment to be taken in this case.

It would be unjust, as well as unwarranted by law, to permit judgment for $598,143.31 upon such an unconscionable contingent liability as is plaintiff's claim under the facts and conditions presented in the record.  It would be likewise futile and useless to allow the claim, even if there was legal warrant therefor, because the defendant is hopelessly insolvent.

An order having been made consolidating this case with that of *Catrow* v. *C., D. & M. Ry.* the court has before it the facts that the bonded indebtedness of defendant is a total amount in excess of the value of the property and assets.

Plaintiff's right to maintain the action is denied, the finding and judgment is against the plaintiff, and the action is, therefore, ordered dismissed.